IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re NATIONAL RESEARCH CORPORATION Shareholder Litigation. | 4:17-CV-441<br><br>MEMORANDUM AND ORDER |

This matter comes before the Court on the motion of National Research Corporation (NRC), its CEO Michael D. Hays, and members of its Board of Directors Joann M. Martin, Barbara J. Mowry, John N. Nunnelly, and Donald M Berwick, (hereinafter the Directors), to dismiss the plaintiffs' suit against them in its entirety pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, to dismiss the plaintiffs' federal claim and stay the plaintiffs' state claims in favor of a parallel Wisconsin case docketed in Milwaukee County Circuit Court. The Court will grant their motion and dismiss the case in its entirety.

I. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the

factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*[1]

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

---

[1] When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

The defendants filed several exhibits along with their brief in support of their motion to dismiss. Filing 52. The plaintiffs too, attached several exhibits to their brief opposing the defendants' motion. Filing 61. For the most part, the defendants' exhibits are public filings that are either embraced by the complaint or judicially noticeable. *See Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 663 (8th Cir. 2001). The plaintiffs' not so much—but nothing in the plaintiffs' brief explains why their exhibits are relevant anyway. After careful review of the parties' motions and briefing, the Court concludes that the exhibits submitted are not needed to resolve the defendants' motion, so the Court need not consider them. *See, e.g., Little Gem Life Sciences v. Orphan Medical*, 537 F.3d 913, 916 (8th Cir. 2008).

## II. BACKGROUND

Anthony Gennaro commenced this matter as a "Verified Shareholder Class Action" complaint, filed on November 15, 2017, naming NRC, Hays, and the individual board members as defendants. Filing 1. On November 30, the Court ordered Gennaro's complaint consolidated with a complaint filed by James Gerson (4:17-CV-3152, filing 1). Filing 29. On March 23, 2018, Gennaro and Gerson filed their Verified Consolidated Shareholder Class Action and Derivative Complaint, which is now the operative complaint and the object of the defendants' motions to dismiss. Filing 43.

Hays founded NRC in 1981. Filing 43 at 8. In 1997, Hays reincorporated NRC in Wisconsin. Filing 43 at 8. Notwithstanding its reincorporation, NRC's headquarters remained in Nebraska. Filing 43 at 8. In 2013, NRC engaged in a recapitalization that resulted in two classes of stock—Class A Stock and Class B Stock—with different voting and dividend rights. Filing 43 at 9. Holders of Class B Stock received one vote per share, whereas holders of Class A Stock received 1/100th of a vote per share. Filing 43 at 9. Also, holders of Class B Stock had the right to receive six times the dividend paid on a share of Class A Stock. Filing 43 at 9.

Hays is NRC's controlling shareholder. Filing 43 at 10. In 2017, Hays held approximately 26 percent of the outstanding shares of Class A Stock and approximately 56 percent of the outstanding shares of Class B Stock. Filing 43 at 10. Because of his stock holdings, Hays held approximately 54.1 percent of the total voting power. The Michael and Karen Hays Grandchildren's Trust was established by Hays and his wife and held approximately 28 percent of the outstanding Class A Stock and approximately 3.5 percent of the outstanding shares of Class B Stock. Combined, Hays and the Trust controlled

approximately 54 percent of the Class A Stock voting power, and 59.5 percent of the Class B Stock voting power. Filing 43 at 10.

Sometime before August 2017, Hays and the Board began formulating a plan to repurchase and retire all outstanding Class B Stock, except the Class B Stock owned by Hays. Filing 43 at 10. The complaint refers to this as the "Hays Transaction." Filing 43 at 10. The plaintiffs assert that Hays and his family were the intended beneficiaries of the Hays Transaction. Filing 43 at 11. According to the plaintiffs, when the Hays Transaction was announced, Hays held a 40.8 percent "economic stake" in NRC and controlled 54.1 percent of NRC's voting power. Filing 43 at 11-12. Had the Hays Transaction come about, Hays would have held a 51.9 percent economic interest in NRC and controlled 92.3 percent of its voting power. Filing 43 at 12.

However, the Hays Transaction was never implemented. Filing 43 at 27. The plaintiffs credit their initial complaints and motions for preliminary injunctive relief, filed between November 15 and 17,[2] with the NRC Board's announcement on December 13 that it was terminating the proposed Hays Transaction. Filing 43 at 26-27. The plaintiffs allege, at length, all sorts of damage and harm to NRC and its minority shareholders that they say would have occurred had the Hays Transaction taken effect. Filing 43 at 10-26. In addition, the plaintiffs allege that NRC suffered damage notwithstanding the Board's abandonment of the Hays Transaction. In this regard, the plaintiffs claim that NRC "incurred over $1 million in unnecessary expenses, including

---

[2] The merits of those motions, *e.g.* filing 9, were never ruled upon—instead, the parties stipulated to extended deadlines when the defendants represented that the Hays Transaction was likely to be withdrawn, filing 33, and the Court denied them as moot when a different transaction was proposed, filing 40.

4

over $500,000 of Hays's personal expenses that the Board decided to reimburse." Filing 43 at 27.

Although the Board abandoned the Hays Transaction, the Board did not abandon the concept that the Class B Shares needed to be retired. The Board developed what the plaintiffs refer to as the "Replacement Transaction" to address nearly all the criticisms the plaintiffs raised regarding the Hays Transaction. Filing 43 at 27-28. For example, in the Replacement Transaction, Hays' and his family's collective voting power will not increase. Filing 43 at 28. In addition, all Class B Stock shares, including Hays' Class B Stock holdings, would be repurchased for one share of Class A Stock and a cash payment of $19.59 per share of Class B Stock. Filing 43 at 27-28.

The Board elected to solicit minority shareholder approval of the Replacement Transaction even though Hays and his family constituted a majority of the voting power. Filing 43 at 28. The plaintiffs allege that the proxy issued by the Board to solicit the minority shareholders' approval failed to disclose material information because it did not include NRC management's cash flow projections. Filing 43 at 28. The plaintiffs also allege that the proxy appeared to mislead shareholders regarding reimbursement of Hays' "personal expenses" by reporting that the expenses were for legal, advisory, and financial modeling fees that would have been borne directly by NRC had Hays not advanced the costs. Filing 43 at 28.

### III. DISCUSSION
#### 1. PLAINTIFFS' FEDERAL CLAIMS

The plaintiffs allege that NRC and its Directors violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14(a)-9, 17 C.F.R. § 240.14a-(9). Filing 43 at 33. Section 14(a) was "intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies

5

would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.'" *Mills v. Electric Auto-Lite*, 396 U.S. 375, 381 (1970) (quoting H.R. Rep. No. 1388, 73rd Cong., 2nd Sess., at 14; S. Rep. No. 792, 73rd Cong., at 12).

Rule 14(a)-9 "prohibits the solicitation of proxies by means of materially false or misleading statements." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1087 (1991). Materiality is determined by whether "'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" *Id.* at 1090 (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)). A defect in a proxy must "have a significant *propensity* to affect the voting process." *Mills v. Electric Auto-Lite,* 396 U.S. at 384. A violation of Rule 14(a)-9 "cannot be established by proof of a defect so trivial, or so unrelated to the transaction for which approval is sought, that correction of the defect or imposition of liability would not further the interests protected by § 14(a)." *Mills*, 396 U.S. at 384.

The NRC defendants assert that the plaintiffs' pleading failed to conform to the pleading requirements found in the Private Securities Litigation Reform Act of 1995 (Reform Act). Filing 50 at 24. The plaintiffs' brief in opposition did not specifically address the NRC defendants' assertion, or even acknowledge the existence of the Reform Act and the several United States Supreme Court and Eighth Circuit Court of Appeals decisions concerning the pleading requirements found in the Reform Act.

The pleading requirements found in the Reform Act embody the pleading requirements for alleging fraud pursuant to Fed. R. Civ. P. 9(b). *In re K-tel Intern., Inc. Securities Litigation,* 300 F.3d 881, 889 (8th Cir. 2002). If a plaintiff alleges that a defendant "made an untrue statement of material fact" or omitted a material fact necessary to make the statements made not

6

misleading, the plaintiff's complaint "shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). If an untrue statement or omission is made on information or belief, "the complaint shall state with particularity all facts on which that belief is formed." *Id.* In addition, the Reform Act requires "proof that the defendant acted with a particular state of mind" and requires a plaintiff, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

"The Reform Act requirements modify review of a motion to dismiss in two significant ways. First, 'we disregard "catch-all" or "blanket" assertions that do not live up to the particularity requirement of the statute.' Second, the complaint must plead specific facts giving rise to a 'strong inference' of the required state of mind." *In re K-tel Intern., Inc.,* 300 F.3d at 889 (quoting *Florida State Bd. Of Admin. v. Green Tree Fin. Corp.,* 270 F.3d 645, 660 (8th Cir. 2001)).

The plaintiffs make two allegations regarding materially misleading statements or omissions in NRC's proxy statement. Accepting the allegations in the plaintiffs' consolidated complaint regarding the Replacement Transaction proxy to be accurate, the plaintiffs first contend that the proxy failed to include cash flow information from NRC's management, which the plaintiffs assert would obviously be material "to shareholders who are cashed out, as is the case here." Filing 43 at 28.[3]

---

[3] It must be noted that contrary to the plaintiffs' allegation, the Class B Stock shareholders were not being "cashed out." Class B Stock was being repurchased with a cash payment and shares of Class A Stock.

7

The plaintiffs failed to state any facts giving rise to a "strong inference" that the NRC Directors or management acted with the state of mind to mislead or deceive the minority stockholders by not including management's cash flow projections in the proxy. The plaintiffs do not ascribe any kind of motive whatsoever to the omission of the cash flow projections. No facts are alleged indicating that the Directors or management had any purpose or plan in mind by omitting the cash flow projections. The plaintiffs merely state that managements' cash flow projections were omitted, and, essentially, a shareholder may have considered that information important in making his or her decision whether to tender their proxy.

Moreover, the plaintiffs allege no facts showing that the proxy was misleading absent managements' cash flow projections—in other words, they point to nothing in the proxy statement that's untrue or even misleading unless the cash flow projections are also included. There are no facts pled suggesting that cash flow projections would have demonstrated that the plan to repurchase Class B Stock was unfair or inadequate. The plaintiffs do not allege facts showing how disclosure of management's cash flow projections would have made a difference of any kind. At best, the plaintiffs speculate that a hypothetical shareholder would have wanted to know management's cash flow projections before deciding whether to tender the shareholder's proxy. But that kind of blanket assertion does not live up to the particularity requirements of the Reform Act. *See In re K-tel Intern., Inc., 300 F.3d at 889*.

Neither did the plaintiffs allege any facts showing that the failure to include management's cash flow projections caused a loss. Although not specifically identified as a pleading requirement, it is a plaintiff's burden to prove the defendant's act or omission "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). By failing to plead any facts

8

showing a loss resulting from the non-disclosure of management's cash flow projections in the proxy, the plaintiffs have essentially acknowledged that the missing cash flow projections did not result in a quantifiable loss.

The plaintiffs next assert that the proxy statement was materially misleading regarding the disclosure of the Board's reimbursement of what the plaintiffs characterize as Hays' "personal expenses" that were incurred during development of the Hays Transaction. Although the plaintiffs acknowledge the proxy reported that Hays was reimbursed $538,000 for expenses relating to the Hays Transaction, the plaintiffs allege that the proxy failed to report that some portion of the legal fees NRC reimbursed to Hays were for Hays' personal expenses, that the reimbursed legal fees were for the services provided by the same lawyer that also advised NRC (which in their brief the plaintiffs claim was an undisclosed conflict of interest, *see* filing 61 at 28), and that there were certain discrepancies in how the expenses were identified.

The plaintiffs' bare assertion that the expenses reimbursed to Hays were for "personal expenses" is, yet again, a blanket assertion that does not live up to the particularity requirements of the Reform Act. See, *In re K-tel Intern., Inc.*, 300 F.3d at 889. The plaintiffs do not state facts showing that what the plaintiffs want to characterize as "personal" expenses were anything other than expenses Hays advanced to the company while NRC was considering the later-abandoned Hays Transaction. Essentially, the plaintiffs want to characterize the abandoned Hays Transaction as Hays' personal transaction. Even if that were true, the Hays Transaction was abandoned. The question for a Section 14(a) claim is whether the statement in the Replacement Transaction proxy was false or misleading as to disclosure of the expenses reimbursed to Hays.

9

In this regard, the plaintiffs do not claim that the amounts identified in the proxy as reimbursements to Hays for legal expenses and advisory fees in connection with the Hays Transaction were inaccurate, false or misleading. Neither did the plaintiffs state facts showing that any other reimbursement to Hays reported in the proxy was inaccurate, false, misleading, or unrelated to the Hays Transaction.

The plaintiffs complain that the proxy did not disclose that the legal fees reimbursed to Hays concerned services provided by the same lawyer who was also advising the Directors in connection with the Hays Transaction. Filing 43 at 28-29. The plaintiffs argue in their brief that this sharing of legal services presented a "potential conflict of interest." Filing 61 at 30. However, the plaintiffs failed to state facts showing an actual conflict of interest regarding the legal advice provided, or how the failure to disclose a "potential conflict of interest" in the proxy made the proxy statement false or misleading.

No facts were pleaded showing a strong inference that the NRC defendants acted with an intent to deceive or acted recklessly to deceive shareholders in connection with the disclosure concerning Hays' expense reimbursement. Again, the proxy accurately reported the amount reimbursed to Hays, and accurately reported that the reimbursement concerned the abandoned Hays Transaction. No facts were pleaded showing a strong inference that Hays and the Directors had a motive or reason to conceal that the same lawyer advised Hays, the Trust, and the Board of Directors. Moreover, even if there were facts showing that the defendant Directors negligently omitted disclosure of this claimed "potential" conflict of interest, "allegations of negligent conduct are not sufficient" to meet the scienter requirement of the Reform Act. See, *In re K-tel Intern., Inc.*, 300 F.3d at 893.

Finally, the plaintiffs have not alleged any facts indicating that they suffered a loss resulting from the disclosure of the reimbursement to Hays found in the proxy statement. It is the plaintiffs' burden to prove their loss resulting from what they assert was a false or misleading proxy. Having failed to plead any facts showing such loss, the plaintiffs are apparently without proof of a loss.

## 2. PLAINTIFFS' WISCONSIN STATE CLAIMS

The plaintiffs assert that Hays breached his fiduciary duty to NRC and its shareholders by "proposing, pursuing . . . and causing NRC to incur expenses in connection with the Hays Transaction." Filing 43 at 32. Similarly, the plaintiffs assert the defendant Directors breached their fiduciary duties of "good faith, fair dealing, [and] loyalty" in structuring and approving the Hays Transaction. Filing 43 at 33.

### (a) Breach of Fiduciary Duty—Hays

Hays, as the CEO and majority shareholder, was alleged to have worked with the defendant Directors to plan and develop the abandoned Hays Transaction. Filing 43 at 1. The plaintiffs allege that Hays would have benefited had the Hays Transaction gone into effect by securing a supermajority of the voting power, and by obtaining dividend rights that other shareholders did not have. Filing 43 at 1. However, the plaintiffs' allegations also indicate that the abandoned Hays Transaction would have paid approximately $101 million to all holders of Class B Shares other than Hays. Filing 43 at 3.

Majority shareholders such as Hays owe a very limited fiduciary duty to minority shareholders. "[M]ajority shareholders cannot use their voting power to require corporate action that grants majority shareholders an improper

11

material benefit at the expense of minority shareholders." *Data Key Partners v. Permira Advisers LLC*, 849 N.W.2d 693, 706 (Wis. 2014).

Although the Board of Directors approved the Hays Transaction on September 18, 2017, there is no allegation or indication that Hays did anything to coerce or influence any Director's vote. Moreover, there is no indication that Hays would have received an improper material benefit at the expense of the minority shareholders had the Hays Transaction gone into effect. Hays' shares of Class B Stock were not being repurchased by NRC. The only benefit he would have derived was an *increased* majority voting power. Hays already had majority voting power, but the plaintiffs allege Hays would benefit from a voting power supermajority because the Company Charter required an affirmative vote of two-thirds of the outstanding shares to amend certain corporate Articles. Filing 43 at 15. The plaintiffs' allegation, however, is hardly a sufficient showing of a material benefit to Hays, much less a material benefit at the expense of the minority shareholders, who were to receive $101 million for their Class B Stock shares.

(b) Breach of Fiduciary Duty—Directors

Turning next to the NRC Directors, corporate directors in general have a "fiduciary duty to act in good faith and to deal fairly in the conduct of all corporate business." *Key Data Partners*, 849 N.W.2d at 701. "In Wisconsin, the business judgment rule 'immunize[s] individual directors from liability and protects the board's actions from undue scrutiny by the courts.'" *Id.* (quoting *Reget v. Paige*, 626 N.W.2d 302, 310 (Wis. App. 2001)). The "'acts of the board of directors done in good faith and in the honest belief that its decisions were in the best interest of the company' cannot form the basis for a legal claim against directors." *Id.* "The business of a corporation is committed to its officers and directors, and if their actions are consistent with the exercise of honest

12

discretion, the management of the corporation cannot be assumed by the court." *Steven v. Hale-Hass Corp.*, 23 N.W.2d 620, 628 (1946).

Section 180.0828(1) of the Wisconsin statutes is the codification of the business judgment rule pertinent to this matter. A director is not liable to the corporation or its shareholders for a breach of any duty unless the facts in the complaint allege: (1) "a willful failure to deal fairly" where "the director has a material conflict of interest;" (2) a "violation of criminal law;" (3) a "transaction from which the director derived an improper profit; or (4) "willful misconduct" on the part of a director. Wis. Stat. § 180.0828(1)(a-d).

The plaintiffs' complaint failed to allege a willful failure to deal fairly with the minority shareholders where a director had a material conflict of interest. The Hays Transaction would have compensated all holders of Class B Stock for their shares—that is, everyone but Hays. The plaintiffs complained that the repurchase price was inadequate but failed to allege facts showing that the repurchase price was, in fact, inadequate. Filing 43 at 18. The plaintiffs allege that the Directors voted to accelerate vesting of options for Class B Stock but failed to allege that the accelerated vesting was limited to the Directors' options and not available to everyone who held Class B Stock options. Filing 43 at 23-24.

At best, the plaintiffs complained that the defendant Directors did not do enough to vet the Hays Transaction before approving it. The plaintiffs allege the Directors could have appointed a special committee to deal with Hays, or could have sought a fairness opinion for the Hays Transaction, or could have retained a financial advisor to explore alternatives, or could have retained an independent legal advisor to review the transaction. Filing 43 at 20-23. Striking, however, is how in their consolidated complaint plaintiffs allege damages for the expenses incurred in developing the Hays Transaction, yet

13

now complain that more expenses should have been incurred before moving forward with the Hays Transaction. In any event, while the plaintiffs hypothesize everything they think could have been done, they do not allege facts showing a willful failure to deal fairly with shareholders, or a conflict of interest of any kind, or an improper profit, or willful misconduct on the part of any of the defendant Directors.

## IV. CONCLUSION

The Court finds that the plaintiffs' Section 14(a) claims and Wisconsin state-law claims for breach of a fiduciary duty should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

IT IS ORDERED:

1. The defendants' motion to dismiss (filing 49) is granted.

2. Plaintiffs' consolidated complaint is dismissed.

3. Plaintiffs' motion for oral argument (filing 62) is denied.

4. A separate judgment will be entered.

Dated this 9th day of October, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge